Van Voorhis, J.
Petitioner Hudson Fabrics, Inc. (hereinafter referred to as the “ seller ”) has appealed from orders denying its motion to confirm a second award of arbitrators. The record shows, without dispute, that on January 26, 1948, the parties entered into an agreement in the form of an accepted sales memorandum whereby the seller agreed to sell to respondent Susan Joan Frocks, Inc. (hereinafter referred to as the “ buyer ”) approximately 15,000 yards of certain textiles at a specified price. The contract provided that the terms of payment were net sixty days, unless in the opinion of the seller or its factor the financial condition of the buyer should warrant refusal by the seller to deliver any part of the merchandise except against payment in cash. Thereafter a dispute arose between the parties due to the buyer’s refusal to accept these goods. Arbitration proceedings were instituted, in accordance with a clause in the agreement, before the Arbitration Bureau of the National Federation of Textiles, Inc., and an award was duly rendered on April 22, 1948. The material part of said award provided as follows: “ That in full settlement of the contract between Hudson Fabrics, Inc. and Susan Joan Frocks, Inc., #1754, dated January 26, 1948, Susan Joan Frocks, Inc. shall furnish to Hudson Fabrics, Inc. a color assortment for the merchandise covered by this contract, within three days from the *337 date of this award. Within four weeks from receipt of this color assortment, Hudson Fabrics, Inc. shall deliver and Susan Joan Frocks, Inc. shall accept approximately 15,000 yards of Quality #1260, 44/45 inches wide, and shall pay to Hudson Fabrics, Inc. the contract price of $1.3750 per yard, terms net 60 days, as per contract. ’ ’
This was a direction that the substance of what the parties had agreed upon should be put into effect according to the terms on which they had agreed.
The color assortment was duly furnished in accordance with this award, but the award was not carried out by reason of a dispute which arose over the extension of credit. This controversy revolves around the last words quoted, to wit, “ terms net 60 days, as per contract.” The contract contained the following additional provision entitled Credit Line, which is quoted insofar as material: “ * * * if in the opinion of Seller or his factor, the financial condition of Buyer warrants such action, Seller or his factor may at any time limit or cancel the credit of Buyer as to time and amount and as a consequence may refuse to deliver any part of the merchandise except against payment in cash. Upon failure by Buyer to make any such payment within ten days after demand in writing, Seller may cancel the contract or bill all or any part of the undelivered merchandise to Buyer as of or on contract dates of delivery, or sell all or any part of the undelivered merchandise to Buyer as of or on contract dates of delivery, or sell all or any part of the undelivered merchandise without notice at public or private sale, the Buyer hereby agreeing to be responsible for any financial loss.”
After the said award was made, and on April 26, 1948, the seller confirmed to the buyer by letter that the seller’s factor had demanded payment in cash upon delivery of these goods pursuant to the above-quoted credit line clause in the contract. The basis for taking that position, in which the seller joined, was that the seller or its factor had learned that the buyer was transferring its assets to a new corporation and had appeared to be going out of business.
The buyer replied on April 27, 1948, to the seller’s demand for payment in cash, by refusing to pay cash, and insisting upon shipment of these goods on terms net sixty days in accordance with the arbitration award. The seller’s attorney thereupon wrote to the Arbitration Bureau of the National Federation of Textiles, Inc., stating that “ in view of the fact that Susan Joan Frocks, Inc. is out of business, there is every indication that no payment will be made subsequent to the delivery of the goods. *338 Our client finds itself in a most unpleasant predicament as a result of Susan Joan Frocks, Inc., being out of business and its officers refusing to pay before the delivery of the goods. In view of this situation, another hearing is necessary in order to assess the damages sustained by our client by reason of the breach of Contract on the part of Susan Joan Frocks, Inc.”
In opposition to that demand, the buyer’s attorneys wrote to the arbitration bureau that the seller “ is entitled to no further arbitration, in view of the fact that all matters pertaining to the dispute between said companies were thoroughly reviewed by the arbitrators and a final and binding adjudication made. * * * Our client has complied with all terms [of the award] on its part, but Hudson Fabrics, Inc. has refused to comply, and has made a demand for prepayment, which is contrary to the express terms of the award. Based upon conjecture as to alleged future inability to pay, Hudson Fabrics, Inc. has not only failed to comply with the award, but now seeks another arbitration.”
The arbitration bureau granted the request of the seller for a supplemental arbitration, which was conducted before the same arbitrators, who sustained the seller’s position, holding that the buyer had broken the contract by refusing to pay cash in accordance with the seller’s demand under the credit line clause in the contract, and assessed the sum of $2,000 damages against the buyer by reason of such breach.
The jurisdiction of the arbitrators to conduct a further arbitration was derived from rule 19 of the Arbitration Buies of the National Federation of Textiles, Inc., to which the contract was subject. This rule contained the following clause: “ If, in the opinion of the arbitrators, an award which is not for money only has not been complied with fully within a reasonable time, the arbitrators may make a supplemental award for money only, and their powers as arbitrators shall continue for this purpose.”
Special Term has refused to confirm the second award upon the ground that the controversies underlying the two awards are unrelated, and that therefore neither controversy could be resolved by a supplemental award to the first award. The attorney for the buyer insists that the rules of law respecting arbitrations are so inflexible that, regardless of whether the buyer be financially sound or insolvent, no power resides anywhere to relieve the seller from the obligation to deliver these goods on credit after the first arbitration, notwithstanding the credit line clause in the contract, which appears to have been inserted to meet such an exigency. We are unable to reach that conclusion.
*339 The first arbitration was concerned primarily with other questions than the terms of sale. In directing that delivery be made on “ terms net 60 days, as per contract ” (italics supplied), the arbitrators were manifestly accepting the situation as it existed under the contract prior to the giving of notice by the seller or its factor demanding payment in cash under the credit line clause. Such a notice had not been given at the time of the arbitration, but was given afterward, as the seller or its factor had the right to do. It may well be that cash payment could not have been required, even under the provisions of this contract, for purely frivolous reasons, but by their second award the arbitrators have held that the reasons of the seller and the seller’s factor were not frivolous. All that the seller had to do was to show that it acted in good faith. It was not obliged to furnish proof of insolvency. Any issue of good faith has been resolved in the seller’s favor by the result of the second arbitration.
The effect of the first arbitration was not to abrogate the credit line clause in the contract, and when the seller and its factor afterwards acted under it, the effect was to leave the first award in force, except as to the time of payment, but to advance the time of payment so as to make it contemporaneous with the delivery of the merchandise. The refusal of the buyer to comply with this obligation on its part, constituted failure by the buyer to comply with the award within the meaning of arbitration rule 19, reserving to the arbitrators power to make a supplemental award for money only. Such a reservation of power in event of noncompliance included power to assess damages for breach of the contract, which is what the arbitrators did by their second award. There is nothing to indicate that the seller’s right to suspend the extension of credit under the credit line clause was involved in the first arbitration, and the same arbitrators have clearly indicated that the opposite was true by their second award. The effect of the second award was to determine that the prior award had been validly modified so as to accelerate payment, that the award as thus altered had not been complied with by the buyer, that this constituted a breach of the contract of sale, and that the damages therefrom were in the amount which they assessed. In these respects they acted within the powers of arbitrators (Matter of Lipman [Haeuser Shellac Co.], 289 N. Y. 76) and in accordance wdth rule 19 of the National Federation of Textiles, Inc. (Matter of Arcola Fabrics Corp. [Alco Blouse Co.], 274 App. Div. 431; Matter of Packard Fabrics, Inc., [Matter of Gay Togs, Inc.], 274 App. Div. 1050).
*340 The orders appealed from should be reversed and the motion to confirm the second award of the arbitrators should be granted, with $20 costs and disbursements.
Peck, P. J., Dobs, Cohn and Shientag, JJ., concur.
Orders unanimously reversed, with $20 costs and disbursements to the appellant and the motion to confirm the second award of the arbitrators granted. Settle order on notice.