Ruth Cornelia WEAVER, as Administratrix of the Estate of James Weaver, Deceased, Plaintiff,

v.

MILLER ELECTRIC MANUFACTURING COMPANY, INC., etc., Defendant,

American Mutual Liability Insurance Company, Intervenor.

Civ. A. No. 85-0711-X.

United States District Court, S.D. Alabama, S.D.

Aug. 26, 1985.

---

John T. Crowder, Jr., Gregory B. Breedlove, Jay A. York, Cunningham, Bounds, Yance, Crowder & Brown, Mobile, Ala., for plaintiff.

Donald F. Pierce and J. Hodge Alves, III, Hand, Arendall, Bedsole, Greaves & Johnston, Mobile, Ala., for Miller Elec. Mfg. Co., Inc.

Kirk C. Shaw and Robert J. Mullican, Armbrecht, Jackson, DeMouy, Crowe, Holmes & Reeves, Mobile, Ala., for American Mut.

## ORDER

HAND, Chief Judge.

This case gives the Court the opportunity to shed some light on the removal statutes, 28 U.S.C. §§ 1441–1452 (1976), as they relate to Ala.R.Civ.P. 9(h), that allows the practice of pleading fictitious parties. In particular the Court is concerned with the issue of when a defendant must remove to comply with the time limit imposed by section 1446(b).

The complaint in this action was filed in the Circuit Court of Mobile County, Alabama on December 2, 1980. Along with the removant herein, Miller Electric Manufacturing Company, Inc. (Miller), nine fictitious parties were named as defendants. The plaintiff alleged that these were the persons or entities who manufactured, sold, designed and/or distributed a welding machine that allegedly caused the death of the plaintiff's decedent. Miller was served with the complaint on December 18, 1980. Thereafter the case proceeded toward trial for over four years. The parties disagree on when the case was set for trial, the plaintiff claiming March 11, 1985, the defendant claiming March 4. One week before the correct date the parties met in conference with a judge of the circuit court. The judge then continued the trial until May 20, 1985. Each side blames the other for the continuance, and the parties also disagree as to the content of other representations made to the court. On May 20, 1985, the parties arrived for trial, having conducted limited discovery and issued trial subpoenas in the interim. Upon the plaintiff's announcement of ready for trial, which action worked a dismissal of the fictitious parties, Miller filed a petition for removal.

The plaintiff now contends that removal was untimely. Section 1446(b) of Title 28 governs the timeliness of removal. That subsection states, in relevant part:

> [t]he petition for removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action is based....

> If the case stated by the initial pleading is not removable, a petition for removal may be filed within thirty days after receipt by the defendant, *through service or otherwise,* of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable.

28 U.S.C. § 1446(b) (1976) (emphasis added). This statute has been interpreted as establishing three classes of cases. "The case on the initial pleadings may be remov-

able on its face, not removable on its face, or indeterminate in the sense that it does not on its face supply sufficient information to determine whether or not it is removable." *Kaneshiro v. North Am. Co. for Life & Health Ins.*, 496 F.Supp. 452, 456 (D.Hawaii 1980). The first category of cases plainly causes the time limit to start running. The second plainly does not, as the limit will not run until the bar to removal is gone. The third category, which encompasses fictitious party practice, poses a problem. Should the time limit start with the service of the complaint?

The weight of authority in this area is that if the uncertainty arises from something definitely acertainable, such as the diversity of citizenship of known parties, or the amount in controversy, the time limit will commence if the court could determine the case to be removable. *See, e.g., Blow v. Liberty Travel, Inc.*, 550 F.Supp. 375 (E.D.Pa.1982) (indefinite citizenship); *Keller v. Carr*, 534 F.Supp. 100 (W.D.Ark. 1981) (indefinite citizenship); *Kaneshiro, supra,* (uncertain amount in controversy); *Nicholas v. Macneille*, 492 F.Supp. 1046 (D.S.C.1980) (indefinite citizenship); *Horak v. Color Metal of Zurich, Switzerland*, 285 F.Supp. 603 (D.N.J.1968) (uncertain amount). In all of these cases, as in the case at bar, jurisdiction was by diversity of citizenship, 28 U.S.C. § 1332 (1976) and the plaintiff's complaint did not actively conceal diversity, but yielded some clue to diversity. Federal question jurisdiction, 28 U.S.C. § 1331 (1976), involves a totally different inquiry, the well pleaded complaint rule, which need not concern us.

The problem in this case is that the citizenship of fictitious parties is not readily ascertainable as is that of a known defendant or plaintiff. About the most that can be done is to discern whether the claims against the nonresident defendant are severable from those against the fictitious parties. *See, e.g., Pullman Co. v. Jenkins*, 305 U.S. 534, 59 S.Ct. 347, 83 L.Ed. 334 (1939). No such contention is made in this case, as the claims are plainly non-severable. Since the plaintiff controls whether this complaint contains fictitious parties, a better case can be made for tolling the time limit.

Other courts have apparently analyzed the fictitious party issue in terms of when the case becomes removable. *See, e.g., Coker v. Amoco Oil Co.*, 709 F.2d 1433 (11th Cir.1983) in which the court states, albeit in dicta, that "the complaint does not become removable until the plaintiff takes some affirmative action indicating that he does not wish to pursue his claims against the fictitious defendants." *Id.* at 1439. Similarly, in *Hamby v. Zayre Corp.*, 544 F.Supp. 176 (N.D.Ala.1982), the court decided to treat cases with fictitious defendants "as not immediately removable on the basis of diversity jurisdiction, regardless of the specificity of the description of, or of the charges against, such persons." *Id.* at 178. Both of these courts then stated that removal could be had at once if the removant showed fraudulent joinder of the fictitious parties, and that the time limit did not begin until the plaintiff indicated that the fictitious defendants were no longer in the action. However, the initial language on removability tends to confuse the analysis.

 This is not a merely theoretical point. Despite attempts to simplify it, removal practice is somewhat technical. This Court desires not just to lay down a hard and fast rule, which is impossible, but to clarify the proper analysis so that a practical method can be followed that will not snare attorneys in subtle academic pitfalls. For the time limit on removals, while not jurisdictional, is mandatory. *Powers v. Chesapeake & Ohio Ry.*, 169 U.S. 92, 18 S.Ct. 264, 42 L.Ed. 673 (1898). Moreover, the limit is to be construed, along with the rest of the removal statutes, narrowly and against federal jurisdiction. *See, e.g., Shamrock Oil Corp. v. Sheets*, 313 U.S. 100, 61 S.Ct. 868, 85 L.Ed. 1214 (1941). Since an untimely removal can result not only in remand, but in severe sanctions, see *McLaughlin v. Western Casualty and Surety Co.*, 603 F.Supp. 978 (S.D.Ala.1985), it is important to have as certain a method

686

as possible for determining whether the time limit has expired.

The philosophy espoused by the Court is that both plaintiff and defendant should act reasonably and in good faith, so as to not prejudice the rights of the other party. Plaintiffs, who are not required to file state actions with federal jurisdiction in mind, *Blow v. Liberty Travel, Inc., supra,* 500 F.Supp. at 377, should not be allowed to actively conceal removability and yet profit from the thirty day time limit. *See, e.g., Ezon v. Cornwall Eq. Ltd.,* 540 F.Supp. 885 (S.D.Tex.1982) (plaintiff apparently attempted to conceal his citizenship). Because the section 1446(b) does not create a jurisdictional bar, the time limit can be waived. Plaintiff's who do conceal removability effectually waive the right to rely on the limit. A defendant should not be allowed to delay removing when he knows the facts necessary for removal, as the purpose of the statute is to extend the time limit only when a defendant cannot ascertain removability. *Mielke v. Allstate Ins. Co.,* 472 F.Supp. 851, 853 (E.D.Mich.1979). As the defendant has the burden of showing removability, *Pullman Co. v. Jenkins, supra,* 305 U.S. at 540, 59 S.Ct. at 350, 83 L.Ed. at 339, he should not be able to claim the limit is tolled when he *knows* he could remove. Finally, the Court should not become entangled in a lengthy fact-finding process to determine removability.

■ The Court finds that the best application of these issues is as follows. When a state court complaint is filed that does not facially *preclude* removal, the defendant has a duty to inquire about removability. *Kaneshiro, supra,* 496 F.Supp. at 460. The mere presence of fictitious co-defendants does not relieve the defendant of that duty. The purpose of the time limit dictates that a defendant should remove if the *court* can find the case to be removable. *Cf. Horak, supra.* However, the plaintiff's *control* of the use of fictitious parties dictates that he not be allowed to rely on the time bar unless the defendant should be particularly aware of the legality of removal. Thus it may be that the circumstances

and facts controlling removability are peculiarly within the defendant's knowledge. If the defendant knows, for example, that some fictitious defendants are not diverse, or that a fictitious party is a resident defendant, he should wait to remove. Upon dismissal of those parties he can cite the reviewing court to these facts in the removal petition, and the case will fall under the second paragraph of section 1446(b), having then *become* removable. If there is diversity, *and* this fact is peculiarly within the defendant's knowledge, the thirty days will commence with the service of the complaint. If, however, diversity exists but either the plaintiff has so pled as to conceal it, or the defendant has no special knowledge, the thirty days is tolled until the defendant is furnished with information that shows the case as originally filed was removable. (If the information shows that the case was originally *not* removable, the thirty days commences from the date on which the barrier to removal is eliminated.) Again, the defendant should remove if he comes by such knowledge independently of the plaintiff, and not sit on his rights.

The proof of the defendant's special knowledge, in cases in which the complaint is originally removable, may be difficult, amounting almost to bad faith. There is no proof in this case that Miller Electric had any special knowledge of the citizenship of the fictitious parties. Thus, the thirty day limit of section 1446(b) was tolled until the defendant was made aware that there were no obstacles to removal.

The plaintiff argues that the defendant knew at the status conference that the plaintiff was then ready for trial and would not pursue any of the fictitious parties. This is controverted by the defendant, which states that until trial commenced it believed there were resident defendants who were quite possibly responsible for the plaintiff's decedent's injuries. These defendants were, according to Miller, citizens of Alabama who set up the welding system at plaintiff's decedent's place of employment. The Court finds that plaintiff has failed to prove that Miller was definitely

made aware of the status of the fictitious parties.

Plaintiff also contends, however, that the trial subpoenas issued for the May 20 setting showed that the claims against the fictitious parties had been dropped. Miller responds that subpoenas are not proper notice of removability. While not agreeing that subpoenas can never be the source of such notice, the Court does not find that such notice was given in this case. The Court notes that section 1446(b) contemplates a wide variety of sources for notice of the elimination of bars to removal: "... after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper...." 28 U.S.C. § 1446(b) (1976).

█ The Court finds that this case remained indeterminate for purposes of removal until the plaintiff announced ready for trial, thereby dismissing the fictitious parties. Plaintiff's protestations that the defendant knew the situation is unsupported by proof.

In this case the Court does not find the conduct on either side to suggest a violation of the requirement of Rule 11 of the Federal Rules of Civil Procedure. However, in the future in cases of either improper use of fictitious parties, improper removals, or frivolous motions to remand such sanctions might be warranted. Removal is a means of allowing out-of-state defendants to avoid being prejudiced by litigating in the plaintiff's forum. It is *not* a tactical weapon by which counsel may avoid an inconvenient trial setting or otherwise gain some advantage from delay.

The Court notes, finally, that the approach herein varies somewhat from both *Hamby* and the dicta in *Coker*, cited earlier. The Court believes its analysis will furnish a more structured method for the practicing attorney to follow in deciding when, and whether, to remove.

As the removal herein was timely effected, the motion to remand to state court is without merit. The Court therefore OR-DERS that the motion to remand be, and it hereby is DENIED.

IT IS SO ORDERED.